Private Laws 1831, ch. 154, first provides that the justices of Brunswick shall classify themselves, and then it defines the powers, duties and responsibilities of the several classes. It then adds, as a substantive and independent provision, in section 6, that "in any case in (504) which a majority of justices is required and does not attend, those who are present may proceed to take the sheriff's bonds and do any other business that a majority is required to do, which shall be as valid as if done by a majority of the justices." The subsequent private act of 1835, ch. 43, again directs the justices of that county to arrange themselves in classes, and defines the duties and powers of those classes respectively, or a majority of them. But in no part of it is there any reference to the general provision of section 6 of the former act, already quoted, whereby any justices present — of course, to the number of three or more — received authority to exercise all the powers of a majority of the justices. Consequently, that general provision remains untouched; and, whether the justices classed themselves or not, any three of them could lay the county tax.
The action is also properly brought upon the relation of the county trustee, and the character of the particular person, Mr. Owens, as filling that office, is not open to dispute, as it is not put in issue by the pleadings. An analogous case is the familiar one of a suit by an executor, as such, in which he need not produce his letters at the trial, unless neunques executor be pleaded. It results from the provision of the act of 1777. Rev. St., ch. 29, sec. 4, that the county trustee may "demand, sue for and recover" from the sheriffs and all other persons any money due for the use of the county; that he may bring the suit in his own name, no other form being prescribed. But it is supposed that the subsequent act of 1831, Rev. St., ch. 28, sec. 30, alters the former law, because it requires suits for money due the county to be "brought in the name of the State for the use of the county." The two provisions, however, relate to different cases and are clearly compatible, and therefore both may and must stand. The latter provision relates exclusively to suits instituted by committees of finance, whose *Page 352 
(505) appointment is provided for and powers fixed by the act of 1831. It is clear that the committee was not intended to supersede the county trustee, for one of the duties of the committee is to settle with the county trustee. Besides, both of the acts of 1777 and 1831 are retained in the Revised Statutes, and, therefore, they must be construed so as to render them consistent, if possible. Now, that may be done by taking into consideration that in some counties the office of trustee is abolished, and in others it is left to the justices to abolish it; and, therefore, in those cases the committee of finance have to some extent the duties of settling, in his stead, with the receiving and disbursing officers of the county revenue, and, consequently, in some case may have to institute suits. Indeed, when the county trustee himself is a defaulter, no one can sue him but the committee of finance, until the period of appointing a successor has arrived. And even if there be a county trustee, and he will not proceed against a sheriff in arrear, or other receiver, the fair construction of the act must be that the committee of finance may provide for the security of their county revenue by bringing suit. In any of those cases the action must, no doubt, be instituted by the committee in the name of the State for the use of the county, because the act of 1831 requires it. But when there is a county trustee, and, without any interference of the committee of finance, or its appearing even that there is one, very clearly it still continues his duty, by force of chapter 29 of the Revised Statutes, to sue for the money due the county, in the same manner as he might before the passing of the act authorizing the appointment of a committee and conferring on it the power of bringing suit. It was upon this distinction that the case of McIntosh, ante, 307, was in truth decided; and, instead of being for the defendants, as insisted, it is directly the other way. By a private act, 1835, ch. 78, the office of (506) county trustee was abolished in Moore, and the duties transferred to the sheriff, who was required "to perform them under the same rules and regulations and restrictions as are now prescribed by law for the government of the county trustee"; "and" it is added, "in all cases where suits are by law directed to be brought in the name of the county trustee, such suit or suits shall be brought in the name of the chairman of the County Court." That, manifestly, has in view such suits as the sheriff, in the discharge of the functions of county trustee thereby conferred on him, should find it necessary to institute, and no others. There was no intention of interfering with the duties and powers of a committee of finance to settle with and sue any defaulting officer, and especially the sheriff himself, *Page 353 
in the form prescribed in the public act for the government of that committee. Well, McIntosh was in default as sheriff and county trustee, and a suit was instituted by the committee of finance against him and his sureties, and for these reasons the Court was obliged to hold that it was properly brought in the name of the State for the use of the county; since the general law expressly required suits instituted by the committee to be thus brought, and the provision in the private act was not intended to modify that provision of the general law, but only to say how the sheriff should bring the suit when he found it necessary to bring one as the substitute for the county trustee. The three provisions are, in truth, all distinct, for the different statutes or chapters direct the county trustee to sue in his own name; the committee of finance, in the name of the State for the use of the county; and the sheriff, in the name of the chairman of the County Court.
For these reasons, and those stated by my brother Nash on the other points, I concur with him that there should be judgment for the plaintiff upon the verdict.
PER CURIAM. Judgment reversed, and judgment for the plaintiff.
Cited: Simonton v. Lanier, 71 N.C. 504; S. v. Cunningham, 72 N.C. 477;Comrs. v. Magnin, 86 N.C. 287; Muller v. Comrs., 89 N.C. 176; S.v. Rivers, 90 N.C. 739; Hughes v. Boone, 102 N.C. 163; McGuire v.Williams, 123 N.C. 356; Greene v. Owen, 125 N.C. 219; S. v. Perkins,141 N.C. 807.
(507)